UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| DANIEL J. HAYDEN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:06CV1784 CDP |
| | ) | |
| INTERNATIONAL BROTHERHOOD OF TEAMSTERS, LOCAL 600, | ) ) ) | |
| | ) | |
| Defendant. | ) | |

# **MEMORANDUM AND ORDER**

Plaintiff Daniel J. Hayden is a member of defendant International Brotherhood of Teamsters, Local 600. Hayden brings this action against Local 600 alleging that the union violated the duty of fair representation and retaliated against him in violation of his speech rights under the Labor-Management Reporting and Disclosure Act, 29 U.S.C. § 411(a). In 1999 and 2000, Hayden made complaints about the union's involvement in politics, and he alleges that Local 600 retaliated against him for this speech. Most of Hayden's duty of fair representation claims are time barred, and the facts establish that Local 600's decision to fine Hayden for his use of the 34-hour restart was not arbitrary, discriminatory, or in bad faith. Further, Hayden's claim that Local 600 retaliated against him in violation of LMRDA also fails for a number of reasons. Because

there is no genuine dispute of material fact and Local 600 is entitled to judgment as a matter of law, I will grant Local 600's motion for summary judgment.

Background

Hayden has been a member of Local 600 since 1994 when he began working for Consolidated Freightways. Hayden testified that in either late 1998 or early 1999, he suggested to shop steward John Kimbrell that a work rule committee be formed. Hayden also testified that in 2000, he complained to Local 600 President Dan McKay about Al Gore campaign posters in the union hall, challenged Local 600 about using the union hall for election campaigns, threatened to report Local 600 to the Federal Election Commission, complained to McKay about a Mel Carnahan campaign rally held at the hall, and told McKay that politicians should not be allowed at union meetings.

In October 2001, Hayden was placed on layoff status by Consolidated Freightways. Kimbrell made derogatory remarks about Hayden and placed a notice on the union bulletin board in August 2001 that said, "Dan Hayden's DNA is polluted." After Hayden informed McKay of this notice, McKay told Kimbrell to remove it. Hayden testified that Mark Coon, a shop steward, repeatedly called him a scab. In April 2002, Hayden discovered that union members were calling him a "card-carrying scab" and states that this was because he was working

overnights at USF Holland before a Local 600 strike.

Hayden was offered a position of employment as a replacement or casual driver with USF Holland in March 2002. Hayden was terminated from USF Holland on April 5, 2002. Hayden testified that a union representative told him that the union would not do anything for him regarding Hayden's termination from USF Holland. Hayden filed charges with the National Labor Relations Board against USF Holland and Local 600 claiming that the union interfered with his employment. At about the same time, Hayden's dues check was sent back to him.[1] The NLRB refused to issue a complaint with regard to his termination from USF Holland or Local 600's failure to help him and denied Hayden's appeal. It found "insufficient evidence to establish that the Employer violated the National Labor Relations Act" because the evidence indicated that Hayden had been employed as a replacement casual employee under temporary circumstances, so USF Holland was not obligated to offer him a permanent position.

In September 2002, while Hayden was still on layoff status, Consolidated Freightways closed. After Consolidated Freightways closed, Hayden applied for a position with ABF Freight Systems in St. Louis and in Chicago. ABF is a member

---

[1] Hayden initially claimed that the returning of his union dues was also actionable here. In his summary judgment memoranda, he has since abandoned that claim.

of the National Master Freight Agreement, and as a result, has to give preferential treatment to employees displaced as a result of layoffs or closings. Hayden was offered a position in Chicago in October 2002 but chose not to take the position. In August 9, 2003, Hayden was hired by ABF. Hayden testified that he was told by an ABF official that in late July or early August 2003, before he was hired, a Local 600 official told ABF not to hire him because he was a troublemaker. From June 19, 2000 until August 2003, ABF had hired only two drivers for the St. Louis terminal. Both of those drivers had been laid off from ABF's Springfield, Illinois terminal and had contractual rights to preferential hire.

In January 2004, the Federal Motor Carrier Safety Administration issued revised rules concerning hours of service for over-the-road drivers. Under the rules, a driver could drive no more than sixty hours in seven days or seventy hours in eight days. Under the new rule, drivers could "restart" their work week by taking 34 consecutive hours off duty. After 34 consecutive hours off duty, the seven or eight day cycle could be reset at zero hours. For example, a driver could compress the sixty hours into four or five days in a work week, rest for thirty-four hours, and then start a new work week on what would have been the fifth or sixth day of the work week. It would allow a single driver to work more hours and would allow an employer to use fewer drivers. This new rule is known as the "34-

hour restart." That same month, ABF announced to its drivers that it would allow individual drivers to use the 34-hour restart.

At the end of January, the Teamsters International issued a memorandum to its local unions indicating that negotiations would take place on a national level regarding the new hours of service rules. Negotiations regarding the restart were important because the restart allows trucking companies to employ fewer drivers to complete the same number of runs. The Teamsters International took the position that the new 34-hour restart rule was permissive, not mandatory, that use of the 34-hour restart was inconsistent with the National Master Freight Agreement, and that this issue was to be negotiated at the national level. On April 7, 2004, the Teamsters National Freight Industry Negotiating Committee issued a memorandum instructing all drivers that they were to follow the old 70-hour rule, stating, "TNFINC did not reach agreement with [the trucking industry employer association] or authorize it to utilize the 34-hour restart on any runs. As of today, all drivers are under the old 70-hour rule."

Hayden admits that while at ABF in Little Rock, Arkansas in April 2004, he saw a memorandum that stated drivers could no longer use the 34-hour restart. On May 10, 2004, Local 600 Recording Secretary Rick Meyer notified all ABF load drivers that there were to be no 34-hour restarts, mandatory or voluntary. On June

13, 2004, Dan McKay sent a letter to ABF that stated that the union believed the 34-hour restart was not allowed under the current National Master Freight Agreement. That same day, McKay notified all Local 600 drivers that any member using the 34-hour restart would be in violation of the agreement and that any member who lost work as a result of another member's using the restart would be entitled to compensation through the grievance procedure.

On August 11, 2004, Hayden spoke with an assistant shop steward, John Dibben, and told Dibben that he was thinking of using the 34-hour restart. At that time, Hayden had driven 68 hours in his work week. Dibben told Hayden that his use of the restart could not be authorized. Hayden also spoke to Gary Lucas, a driver from ABF and Local 600 shop steward. Lucas testified that he told Hayden that he would be subject to internal union charges if he used the 34-hour restart, but Hayden testified that Lucas told him that the union did not have any problem with drivers using the 34-hour restart and that use of the rule was up to each individual driver. It is undisputed that Hayden also spoke with Scott Martin, an ABF terminal manager, who told him that employees had the right to use the restart.

Hayden then used the restart and drove to Little Rock on August 12. Upon his return to the St. Louis ABF terminal on August 13, Hayden encountered Lucas

and informed him that he had used the 34-hour restart. At this point a heated verbal exchange took place between Hayden and Lucas and Lucas called Hayden a "mother fucker." On August 16, 2004, Lucas filed an internal union charge against Hayden for using the 34-hour restart. At the same time, Lucas filed a grievance against ABF alleging that ABF had breached the National Master Freight Agreement by allowing Hayden to use the 34-hour restart. Lucas's grievance against ABF was eventually settled, and ABF agreed to pay the senior available driver for Hayden's run and agreed not to allow its drivers to use the 34-hour restart. The Local 600 Executive Board held a hearing on September 17, 2004 concerning Lucas's charge against Hayden. On September 24, 2004, the Board found Hayden guilty of violating Union instructions regarding the 34-hour restart and fined him $327.13, the amount he earned by using the restart.

Hayden appealed the Board's decision. He also filed a charge with the NLRB challenging the discipline imposed on him, but later withdrew the NLRB charge. On April 18, 2005, the Joint Council of Teamsters No. 13 conducted a hearing on Hayden's appeal, and in July 2005, it denied Hayden's appeal and affirmed the decision of the Local 600 Executive Board. Hayden appealed the Joint Council's decision to the General Executive Board of the Teamsters International. In February 14, 2006, the General Executive Board issued a

decision denying Hayden's appeal. He then appealed the General Executive Board's decision to the Teamsters International Convention, which also denied Hayden's appeal during the June 2006 Convention. Hayden filed this complaint on December 18, 2006.

## Discussion

Hayden's complaint asserts claims against Local 600 for breach of its duty to fairly represent him and for retaliation for his exercise of free speech rights in violation of 29 U.S.C. § 411. Hayden's summary judgment opposition brief makes it clear that his complaint is based on several acts alleged to have been taken by Local 600 officers and stewards including: (1) abusive language, i.e. calling Hayden a scab, mother fucker, troublemaker, or stating that he has "polluted DNA," (2) refusing to help Hayden when he was terminated from USF Holland, (3) interfering with his employment prospects at ABF, and (4) fining him for his use of the 34-hour restart.[2]

In determining whether summary judgment should issue, I must view the facts and inferences from the facts in the light most favorable to Hayden.

---

[2] According to defendants, Hayden's interrogatory answers indicated a number of other factual basis for his complaint that are not discussed in his opposition memorandum or explicitly addressed in his complaint. Therefore, those additional factual claims will not be discussed in this memorandum.

Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). Local 600 has the burden to establish both the absence of a genuine issue of material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Once Local 600 has met this burden, Hayden cannot rest on the allegations in his pleadings but by affidavit or other evidence must set forth specific facts showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e).

The duty of fair representation is a judicially created doctrine. Ford Motor Co. v. Huffman, 345 U.S. 330, 337 (1953). The duty of fair representation requires a union "to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct." Marquez v. Screen Actors Guild, Inc., 525 U.S. 33, 44 (1998) (quoting Vaca v. Sipes, 386 U.S. 171, 177 (1967)). To prevail on a duty of fair representation claim, Hayden must establish a causal connection between the union's wrongful conduct and his injuries. Sim v. New York Mailers' Union Number 6, 166 F.3d 465, 472 (2nd Cir. 1999); see also Ackley v. Western Conference of Teamsters, 958 F.2d 1463, 1473 (9th Cir. 1992). Duty of fair representation claims are governed by a six-month limitations period.

DelCostello v. Teamsters, 462 U.S. 151, 172 (1983); see also Skyberg v. United Food and Commercial Workers Int'l Union, AFL-CIO, 5 F.3d 297, 301 (8th Cir. 1993).

Under the Labor Management Reporting and Disclosure Act, it is unlawful for any labor organization to "fine, suspend, expel, or otherwise discipline any of its members" for exercising the right to free speech as provided by 29 U.S.C. § 411. 29 U.S.C. § 529. Still, unions retain "the right to adopt and enforce reasonable rules as to the responsibility of every member toward the organization as an institution and to his refraining from conduct that would interfere with its performance of its legal or contractual obligations." 29 U.S.C. § 411(a)(2).

In order to establish Hayden's free speech retaliation claim under the LMRDA, he must prove that: (1) Hayden's conduct was an exercise of free speech protected under the LMRDA, (2) Local 600 took action against him or otherwise disciplined him because of this speech,[3] and (3) he suffered an injury as a proximate result of Local 600's adverse action. Kauffman v. Int'l Bhd. of Elec. Workers, Local Union No. 461, 124 F. Supp. 2d 1127, 1131 (N.D. Ill. 2000)

---

[3] There appears to be some dispute about the necessary causal connection between the speech and the defendant's decision to take action against a plaintiff. Some courts have held that the speech must have played a substantial role in the decision, while others have held that the plaintiff need only show that the speech played any role. See Baker v. Buffenbarger, 2006 WL 1049866, at *3 (N.D. Ill. 2006). I will not reach this question because defendants are entitled to summary judgment under either standard.

(citing Black v. Ryder/P.I.E. Nationwide Inc., 970 F.2d 1461, 1469 (6th Cir. 1992)). Only actions that involve fining, suspending, expelling, or otherwise disciplining an employee are actionable under LMRDA. See 29 U.S.C. § 529. The term "otherwise disciplined" has been held by the Supreme Court to refer only to retaliatory actions that affect a union member's rights or status as a member of the union. Finnegan v. Leu, 456 U.S. 431, 437 (1982). With these statements in mind, I will now examine Hayden's duty of fair representation and retaliation claims with regard to the four retaliatory actions alleged by Hayden.

First, Hayden alleges that shop stewards and others used abusive language in reference to him.[4] All of the duty of fair representation claims based on abusive language are barred by the statute of limitations. None of the alleged abusive statements took place within six months of the filing of this lawsuit, and Hayden did not file any administrative claim regarding the abusive language. Additionally, any LMRDA claims based on the alleged abusive language also fail because such abusive language and name calling is not an adverse action under the LMRDA. The language did not "fine, suspend, expel, or otherwise discipline"

---

[4] Hayden's claims regarding abusive language include the "polluted DNA" posting on the union bulletin board in August 2001, statements by shop stewards and others that he was a "scab" or "card carrying scab" in 2002, his allegation that Lewis told ABF that he was a "troublemaker," and his allegations that Lucas called him a "mother fucker" following his use of the 34-hour restart in August 2004.

Hayden as required by the LMRDA. See 29 U.S.C. § 529. Indeed, "mere speech, absent an implied or explicit threat of meaningful official punishment, does not reach the level usually required to demonstrate infringement of rights guaranteed by [the LMRDA]." Commer v. Keller, 64 F. Supp. 2d 266, 272 (S.D.N.Y. 1999). Nothing in Hayden's allegations of abusive language demonstrates an implied or explicit threat of meaningful punishment. As a result, any LMRDA claim based on the abusive language also fails.

Next, Hayden alleges that Local 600 refused to help him when he was terminated from USF Holland in April 2002. This factual allegation is also outside the duty of fair representation limitation period. Therefore, I turn to the question of whether Hayden has stated a claim under the LMRDA based upon this factual allegation. Hayden cannot establish that Local 600's decision not to assist him with his claim against USF Holland injured him. Hayden's own statement of facts states that he was employed with USF Holland as a replacement or casual worker. The NLRB found that USF Holland was not obligated to offer him a permanent position under those circumstances. Because Hayden did not have a permanent position with USF Holland and because USF Holland did not have an obligation to offer him such a position, Hayden cannot establish that any action by Local 600 would not have been futile. While Hayden alleges that Local 600

refused to help him following his termination with USF Holland, there is no evidence that the union representatives could have done anything to help Hayden in that situation.

Hayden's next claim is that Local 600 interfered with his employment prospects at ABF in late July or early August 2003 by telling ABF officials not to hire him. Again, this is outside the limitations period for duty of fair representation claims so I need not address how these facts would apply to the merits of that claim. Further, Local 600 is entitled to summary judgment on any retaliation claim Hayden asserts based on the ABF allegations. Hayden has provided no admissible evidence to support his allegations that Local 600 officials told ABF not to hire him. His only evidence is unsubstantiated hearsay. Even if I were to accept these hearsay statements as true, Local 600 would still be entitled to summary judgment because Hayden cannot establish any injury.

Hayden argues that the date of his hire by ABF is disputed. Based upon an affidavit that he submitted to the NLRB, he asserts that he was hired on August 9, 2004, but this date is blatantly contradicted by the record, and the undisputed facts show that he was hired on August 9, 2003. The same NLRB affidavit that supports the 2004 date also states that Hayden was hired in 2003, and the records of ABF -- a disinterested third-party -- indicate that Hayden's start date was

August 9, 2003. Hayden has admitted that in April of 2004 he saw a memo about the 34-hour restart when he "was at ABF in Little Rock, Arkansas." Further, it is physically impossible for Hayden to have started work at ABF on August 9, 2004, to have already driven 68 hours in his work week and then to have used the 34-hour restart to drive Little Rock on August 12, 2004. There are only twenty-four hours in a day -- and a start date of August 9, 2004 would require him to account for at least 102 hours over a 96 hour period. Therefore, Hayden has not created a genuine dispute of material fact. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." Scott v. Harris, 127 S. Ct. 1769, 1776 (2007).

From June 2000 until Hayden was hired by ABF, only two drivers were hired for the St. Louis ABF terminal. ABF was contractually obligated to preferentially hire those drivers. Because ABF hired Hayden almost immediately after he alleges Local 600 officials told ABF not to hire him and because no one else was hired before Hayden, he cannot establish any injury. Therefore, any statements that Local 600 officials made to ABF regarding Hayden cannot serve as a basis for a LMRDA claim.

Hayden's final claim is that Local 600 improperly fined him for his use of the 34-hour restart when other drivers were using the restart. This claim does not appear to be time-barred because Hayden's final appeal with regard to the fine was not denied until June 2006. The facts connected with his fine do not give rise to a claim under the duty of fair representation or under LMRDA. Hayden has presented evidence which, if admissible,[5] would show that *Hayden* knew of drivers who had used the restart, that drivers had used the restart before the union policy went into place barring its use, or that drivers in Cincinnati, outside of Local 600's jurisdiction, used the restart. Hayden has failed to present any evidence that *Local 600* knew of any Local 600 drivers, other than Hayden, using the restart after the Local 600 policy was announced in May 2004. The union was informed of Hayden's use of the restart when Lucas filed his internal charge against Hayden, and there is no evidence that Local 600 was informed of any others who used the restart.

In order to state a duty of fair representation claim, Hayden must show that Local 600's conduct was arbitrary, discriminatory, or in bad faith. Marquez, 525 U.S. at 44. A union acts arbitrarily when its actions are irrational and have no

---

[5] Most of the evidence that Hayden has submitted is unauthenticated and should not be considered.

rational basis or explanation. Marquez, 525 at 46. In this case, Local 600 had a rational basis for fining Hayden. He used the 34-hour restart when on notice that it was against union policy to do so. Teamsters had a written policy against use of the restart because it decreased the number of drivers needed, and Teamsters believed it was outside the previously negotiated union contract. Punishing use of the restart with a fine equal to what a driver made during the run when the drivers were on notice of the union's policy seems the opposite of irrational.

Next, Hayden cannot show that Local 600's action was in bad faith because he cannot show "substantial evidence of fraud, deceitful action or dishonest conduct." Beck v. United Food and Cmty. Workers Union, Local 99, 506 F.3d 874, 880 (9th Cir. 2007) (quoting Amalgamated Ass'n of St., Elec. Ry. and Motor Coach Emp. of Am. v. Lockridge, 403 U.S. 274, 299 (1971)). There is no evidence or allegation of fraud or deceit in this case.

Finally, Hayden cannot establish that Local 600 acted in a discriminatory manner. "To establish that a union's exercise of judgment was discriminatory, a plaintiff must adduce 'substantial evidence of discrimination that is intentional, severe, and unrelated to legitimate union objectives.'" Id. (quoting Lockridge, 403 U.S. at 301). In order to show discrimination, Hayden must demonstrate he was treated differently than other similarly situated union members who had not

exercised free speech rights.  Nothing in the record demonstrates discrimination.  Hayden has not established that Local 600 knew of any other members using the restart.  As a result, Hayden's duty of fair representation claim must fail.

Further, Hayden's LMRDA retaliation claim also fails.  He cannot establish that his fine was a result of his free speech and not an exercise of Local 600's right to adopt and enforce reasonable rules as to the responsibility of every member toward the organization.  Local 600 fined Hayden more than three years after he spoke out about the union's involvement in politics.  Hayden admits that he used the restart even though he was aware that the union's policy was that the restart was not to be used under any circumstance.   As noted above, he has not provided any evidence that Local 600 treated others using the restart differently.  Further, the three year time period between Hayden's speech and Hayden's fine defeats any inference of causation.  See  Carroll v. Int'l Assoc. of Machinists & Aerospace Workers, 2006 WL 4401479, at *4 (N.D. Ga. March 15, 2006) (stating that eighteen months between a protected activity and adverse action was sufficient to defeat a reasonable inference of causation); see also Marshall v. Am. Fed'n of Gov't Employees, AFL-CIO, 996 F. Supp. 1319, 1326 (W.D. Okla. 1997) (stating that a two-year period between the protected speech and the adverse action was too great to justify an inference of a causal relationship).  Even combined with

Hayden's other allegations, Hayden's allegations regarding the restart do not establish evidence of causation, particularly without evidence that Local 600 treated him differently than others. As a result, Local 600 is entitled to summary judgment on his LMRDA claim as well.

Conclusion

Local 600 is entitled to summary judgment in this case. Most of Hayden's duty of fair representation claims are untimely, and he has not provided any evidence from which a fact finder could conclude that the fine for his use of the restart was discriminatory, arbitrary or irrational. Further, none of his allegations state a claim for free speech retaliation under the LMRDA. Accordingly,

**IT IS HEREBY ORDERED** that defendant International Brotherhood of Teamsters, Local 600's motion for summary judgment [#15] is granted. A separate judgment will be entered this same day.

**IT IS FURTHER ORDERED** that plaintiff Daniel J. Hayden's motion for leave to supplement the record [#25] is granted.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 13th day of February, 2008.